```
                                                            USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                               DATE FILED: May 18, 2015
------------------------------------------------------------X
                                                            :
BLACKROCK ALLOCATION TARGET                                 :
SHARES: SERIES S PORTFOLIO et al.,                          :
                                                            :
                        Plaintiffs,                         :
                                                            :       14-cv-9401 (KBF)
            -v-                                             :
                                                            :
U.S. BANK NATIONAL ASSOCIATION,                             :       OPINION & ORDER
                                                            :
                        Defendant,                          :
                                                            :
THE TRUSTS IDENTIFIED IN EXHIBIT 1,                         :
                                                            :
                        Nominal defendant.                  :
------------------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Plaintiffs are certificateholders in 843 residential mortgage-backed security ("RMBS") trusts. (Complaint ("Compl.") ¶ 17 & Ex. 1, ECF No. 1.) 810 are trusts that issue certificates and are governed by pooling and servicing agreements ("PSA trusts"); 33 are Delaware statutory trusts that issue notes pursuant to Indentures ("indenture trusts").[1] Defendant U.S. Bank National Association ("U.S. Bank" or "defendant") is sued in its role as trustee of all 843 trusts. In their 184-page, 642-paragraph complaint, plaintiffs seek to proceed derivatively (or, in the alternative, on a class basis) to hold U.S. Bank accountable for breaches of contract, violations of the Trust Indenture Act of 1939 ("TIA"), negligence, and breaches of fiduciary duty.

---

[1] Plaintiffs' initial count was slightly different, but plaintiffs have conceded that 810 PSA trusts and 33 indenture trusts is the correct count. (See Pls.' Ltr. dated Feb. 13, 2015 at 1, ECF No. 50.) All trusts that are at issue in this action are set forth in Exhibit 1 to the Complaint.

Before the Court is U.S. Bank's motion to dismiss.  (ECF No. 56.)  U.S. Bank argues that plaintiffs' claims as to the 810 PSA trusts should be dismissed for lack of subject matter jurisdiction because the TIA is inapplicable to PSA trusts, and supplemental jurisdiction is improper.  In addition, U.S. Bank argues that plaintiffs' derivative claims as to the remaining trusts should be dismissed because, inter alia, plaintiffs have not adequately pled demand or futility and, in any event, plaintiffs' claims are direct, not derivative.  For the reasons set forth below, U.S. Bank's motion is GRANTED on those bases.  U.S. Bank also argues that there are substantive bases supporting dismissal of each claim.  The Court declines to reach the substantive bases at this time, as it will provide plaintiffs with a single opportunity to replead.[2]

I.  FACTUAL BACKGROUND

   A.  The Trusts at Issue

810 of the 843 trusts at issue in this action are governed by PSAs.  In a PSA trust, an owner of mortgage loans conveys the loans to a trustee, who holds legal title to those assets in its name.  (See Compl. ¶¶ 277-79, 291-92.)  Investors have a beneficial interest in the mortgage loans that are held by the trustee.  (See id. ¶ 292.)

The remaining 33 trusts at issue are Delaware statutory trusts that issue notes pursuant to Indentures.  (See Compl. ¶ 319; see also Declaration of David F.

---

[2] If plaintiffs decide to replead within the timeframe set forth at the end of this Opinion & Order, defendant may seek to renew its substantive arguments pursuant to Rule 12(c).

Adler in Support of Defendant U.S. Bank National Association's Motion to Dismiss ("Adler Decl.") Exs. E-G, ECF No. 58.)  A Delaware statutory trust is created by a trust agreement between a depositor, an owner trustee, and an administrator.  (See, e.g., Adler Decl. Ex. E; id. § 2.04 (appointing owner trustee).)  In 32 of the 33 indenture trusts at issue here, the owner trustee is not U.S. Bank; it is Wilmington Trust Company.  (See, e.g., Adler Ex. E § 1.01 (defining "Owner Trustee" as "Wilmington Trust Company, not in its individual capacity but solely as trustee under this Agreement, and any successor trustee hereunder").)[3]

      The trust—which is the owner of the mortgage loans—enters into a Sale and Servicing Agreement (or Transfer and Servicing Agreement) with, inter alia, an indenture trustee.  (Compl. ¶ 325; see, e.g., Adler Decl. Ex. F.)  Separately, the trust also enters into an Indenture with the indenture trustee; notes in the trust are issued pursuant to this Indenture.  (Compl. ¶ 320; see, e.g., Adler Decl. Ex. G.) Under an Indenture, the trust pledges its assets to secure the payment of principal and interest on the notes.  (Compl. ¶ 320; see, e.g., Adler Decl. Ex. E § 2.03(a); id. Ex. F § 1.01 (definition of "Trust Estate"); id. Ex. G § 2.13.)  The indenture trustee holds this pledge on behalf of investors who purchase the notes. (Compl. ¶ 320; see, e.g., Adler Decl. Ex. E § 2.03(e).)

      According to the governing documents here, a "Certificate," "Class R Certificate," or "Ownership Certificate" is an "equity certificate representing an

---

[3] For one of the indenture trusts at issue, U.S. Bank Trust National Association ("U.S. Bank Trust"), an affiliate of U.S. Bank, is the owner trustee.

undivided beneficial interest in the Trust." (See, e.g., Adler Decl. Ex. E § 1.01; id. Ex. O § 1.01; id. Ex. P § 1.01; id. Ex. Q § 1.01.) By contrast, "notes" are debt instruments. (See, e.g., Adler Decl. Ex. G § 2.13.) In that respect, "notes" issued pursuant to an Indenture are different from "certificates" issued by the statutory trust. Plaintiffs here are noteholders with regard to the 33 indenture trusts at issue; they are not certificateholders.

      B.     <u>U.S. Bank's Duties as Trustee</u>

Each of the 843 trusts has its own governing agreement (a PSA or an Indenture). Each governing agreement provides that the trustee has certain duties and responsibilities, including, <u>inter alia</u>, to take title to the mortgage loans conveyed to the 843 trusts, to provide notice of incomplete or defective mortgage files, to provide notice of breaches, and to take certain actions in response to servicing failures and "Events of Default."

The governing agreements provide that before "the occurrence of an Event of Default and after the curing of all Events of Default that may have occurred," a trustee is only required "to perform such duties and only such duties as are specifically set forth in this Agreement"; the trustee "shall not be liable except for the performance of the duties and obligations specifically set forth in this Agreement," and "no implied covenants or obligations shall be read into this Agreement against the Trustee." (See, e.g., Adler Decl. Ex. H § 8.01; see also id. Ex. B § 8.01; id. Ex. I § 8.01.)

4

      Moreover, the trustee has no contractual obligation to monitor or oversee servicers or the master servicer—either because the depositor is obligated to do so or because the trustee is explicitly exempted from doing so. (See, e.g., Adler Decl. Ex. B § 3.03 ("Depositor may, but is not obligated to, enforce the obligations of the Master Servicer hereunder. . . ."); id. Ex. I § 3.03 (trustee shall not "have any responsibility or liability for any action or failure to act by the Servicer" and is not "obligated to supervise the performance of the Servicer hereunder or otherwise").) Similarly, the trustee is not charged with knowledge of any Event of Default unless it has received written notice of such. (See, e.g., Adler Decl. Ex. H § 8.02(h) ("Trustee shall not be deemed to have knowledge of an Event of Default until a Responsible Officer of the Trustee shall have received written notice thereof."); id. Ex. B § 8.02(viii) (same); id. Ex. K § 8.02(vi) (same).)[4] The trustee is not required to terminate a servicer unless expressly directed to do so by a specified percentage of certificateholders. (See, e.g., Adler Decl. Ex. J § 8.01 (25%); id. Ex. B § 7.01 (51%).)

      The trustee is also not required to make any investigation unless requested to do so in writing by certificateholders with at least 25% of the voting rights. (See, e.g., Adler Ex. H § 8.02(d); id. Ex. K § 8.02(iv) (same); id. Ex. L § 6.02(iv) (same).) The trustee is not required to demand repurchase of mortgage loans except "[u]pon

---

[4] Some trust agreements do not contain the written notice requirement, but still require actual knowledge. (See, e.g., Adler Decl. Ex. J § 9.01(d)(iv) (BSABS 2005-EC1 PSA) ("The Trustee shall not . . . be deemed to have notice or knowledge of any default or Event of Default unless a Responsible Officer of the Trustee shall have actual knowledge thereof. In the absence of such knowledge, the Trustee may conclusively assume there is no such default or Event of Default.").)

discovery or receipt of written notice" of a defect.  (See, e.g., Adler Decl. Ex. H § 2.03(a); id. Ex. C § 2.03(a) (same); id. Ex. D § 2.03(a) (same).)

### C. Plaintiffs' Allegations

Plaintiffs allege that U.S. Bank breached its duties by failing to provide written notice of breaches of mortgage loan representations and warranties, and by failing to take action on behalf of certificateholders with respect to such failures, including by demanding repurchase.  (See Compl. ¶¶ 586-87, 608-09, 611, 616-18, 623-25, 631-32.)  Plaintiffs also allege that U.S. Bank failed to monitor and provide notice of any breach of duties owed by mortgage loan servicers as specified in the PSAs.  (See id. ¶¶ 589, 608-09, 611, 616-18, 623-25, 631-32.)  Plaintiffs further allege that servicers failed to provide notice of breaches of mortgage loan representations and warranties, failed to service mortgage loans prudently on behalf of certificateholders, failed to pursue foreclosure actions promptly, failed to follow proper procedures for mortgage loan modifications, and improperly made servicing advances.  (Id. ¶¶ 591, 608-09, 611, 616-18, 623-25, 631-32.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  Plaintiffs bear the burden of establishing this Court's jurisdiction by a preponderance of the evidence. Id.  They must do so

affirmatively—and may not simply rely upon favorable inferences drawn from the complaint.  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  "[W]here jurisdictional facts are in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside of the pleadings such as affidavits."  Tandonv. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).

      B.    Supplemental Jurisdiction

A court may exercise supplemental jurisdiction over state law claims when they are "so related to claims" as to which the court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); see also City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997).  The claims must "derive from a common nucleus of operative fact," such that plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Even where claims derive from a common nucleus of operative fact, whether or not to exercise supplemental jurisdiction is a matter within the court's discretion.  See Int'l Coll. of Surgeons, 522 U.S. at 172.  The court has discretion to decline supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional

circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In declining to exercise supplemental jurisdiction, the court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." Int'l Coll. of Surgeons, 522 U.S. at 173 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)) (internal quotation mark omitted).

III. DISCUSSION

    A.    <u>810 PSA Trusts</u>

The vast bulk of the trusts at issue in this action are PSA trusts. In 2014, the Second Circuit held that the TIA—the sole alleged basis for federal question jurisdiction as to these trusts[5]—is inapplicable to PSA trusts. <u>Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon</u>, 775 F.3d 154, 163-70 (2d Cir. 2014) ("<u>BNYM</u>"). The TIA still provides a basis for federal question jurisdiction with regard to the remaining 33 trusts—a jurisdictional point which U.S. Bank does not dispute.

The initial question for this Court, then, is whether it may and should exercise supplemental jurisdiction over state law claims as to the 810 PSA trusts. The Court declines to do so.

Plaintiffs' TIA claim as to the 33 indenture trusts and state law claims as to the 810 PSA trusts do not "derive from a common nucleus of operative fact" such

---

[5] Plaintiffs initially also purported to establish federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (see Compl. ¶¶ 260, 637-42), but plaintiffs have subsequently conceded that CAFA does not apply to PSA trusts. (See Pls.' Ltr. dated Jan. 15, 2015 at 2 n.1, ECF No. 37.)

8

that plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." Gibbs, 383 U.S. at 725. To start, plaintiffs acknowledge that the 33 indenture trusts "have a different structure" from the 810 PSA trusts. (Compl. ¶ 319.) More importantly, each of the 843 trusts at issue here is subject to different governing documents and includes different groups of loans—and the parties that originated these loans, pooled them, securitized them into trusts, and serviced them vary across the 843 trusts. That is plainly significant in what is, at its core, a breach of contract case. Contrary to plaintiffs' assertion, the misconduct alleged in the Complaint must be established "loan-by-loan and trust-by-trust"—by reference to the documents underlying each trust and loan. See BNYM, 775 F.3d at 162 (plaintiffs' claims that the trustee "violated its duties when it failed to notify certificateholders of [loan originators'] breaches of the governing agreements, failed to force [originators] to repurchase defaulted mortgage loans, and failed to ensure that the mortgage loans held by the trusts were correctly documented" require "loan-by-loan and trust-by-trust" proof).[6] There simply is no "common nucleus" among the claims and the trusts here.[7]

---

[6] Although the Second Circuit in BNYM was addressing the issue of class standing—not supplemental jurisdiction—its analysis is equally applicable in this context.

[7] Plaintiffs argue that their "claims derive from the same conduct of the defendant: U.S. Bank's systemic failure to enforce the Trusts' rights." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls.' Opp.") at 8, ECF No. 63.) However, a general failure to act cannot justify supplemental jurisdiction because the question of whether that failure constitutes an actionable breach is a trust-specific inquiry. See BNYM, 775 F.3d at 162 ("Plaintiffs claim that evidence of BNYM's policy of 'inaction' in the face of widespread defaults will be applicable to all of the trusts at issue. But . . . even proof that BNYM always failed to act when it was required to do so would not prove their case, because they would still have to show which trusts actually had deficiencies that required BNYM to act in the first place." (emphasis in original)).

In any event, even if the "common nucleus" test were satisfied, the Court would exercise its discretion to decline supplemental jurisdiction under § 1367(c). The numbers here speak for themselves: the Court lacks a basis for federal question jurisdiction for over 96% of the trusts at issue in this action. To allow 33 trusts to pull in another 810 would be to allow a federal tail to wag a state dog. Ultimately, these numbers suggest that state law claims substantially predominate over the TIA claim—and that exercising supplemental jurisdiction would create difficult management issues that would not otherwise arise.[8] Moreover, this case presents important issues of state law that are better answered in the state courts, such as, for example, whether plaintiffs may bring a derivative action on behalf of a New York common law PSA trust. See Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (quoting Gibbs, 383 U.S. at 726) (internal quotation mark omitted)).

In sum, supplemental jurisdiction is inappropriate here.

B.   The Remaining 33 trusts

Dismissal of the 810 trusts leaves 33 before this Court. As pled, plaintiffs' derivative claims must be dismissed as to these 33 trusts.

---

[8] The very length of the Complaint and the total number of plaintiffs are themselves indicative of the management issues which come with including so many trusts in a single action.

To proceed derivatively, plaintiffs must show either that (1) they made a demand on persons with authority to sue and the demand was refused, or that (2) they did not make a demand because doing so would have been futile. See Stein v. Immelt, 472 F. App'x 64, 65 (2d Cir. 2012) (summary order) ("In New York, demand is required before bringing a derivative suit. If demand is not made, demand futility must be established.")[9] Rule 23.1 of the Federal Rules of Civil Procedure requires plaintiffs to "state with particularity" their efforts to obtain the desired action from persons with authority and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3); see also Halebian v. Berv, 590 F.3d 195, 204 (2d Cir. 2009). Plaintiffs have failed to do so.

Plaintiffs allege that demand should be excused because the would-be recipient of their demand—U.S. Bank—is the wrongdoer. According to plaintiffs, "demand would be futile" (Compl. ¶ 269) as "U.S. Bank would not agree to sue itself" (id. ¶ 270). However, plaintiffs' futility allegations are misdirected. The trust agreements for the 33 indenture trusts at issue authorize the owner trustee to initiate any claim or lawsuit by the trust. (See, e.g., Adler Decl. Ex. E § 5.06(a) (permitting the owner trustee to take certain enumerated actions, including "[t]he initiation of any claim or lawsuit by the Trust . . . and the compromise of any action, claim or lawsuit brought by or against the Trust").) In 32 of the 33 indenture trusts

---

[9] Delaware law is similar. See In re SAIC Inc. Derivative Litig., 948 F. Supp. 2d 366, 376 (S.D.N.Y. 2013) ("Delaware provides that '[a] shareholder's right to bring a derivative action does not arise until he has made a demand on the board of directors to institute such an action directly, such demand has been wrongfully refused, or until the shareholder has demonstrated, with particularity, the reasons why pre-suit demand would be futile.'" (citation omitted)), aff'd sub nom., Welch v. Havenstein, 553 F. App'x 54 (2d Cir. 2014) (summary order).

11

at issue here, the owner trustee is Wilmington Trust Company—not U.S. Bank. (See, e.g., Adler Ex. E § 1.01.)[10] The Complaint does not allege any demand on owner trustee Wilmington Trust Company, nor does it allege that any such demand would have been futile. This is sufficient basis to dismiss the derivative claims involving 32 of the 33 trusts.

In addition (and this includes all 33 trusts)[11], the Court agrees with U.S. Bank that it is not clear that, as pled, plaintiffs' claims are in fact derivative at all. Two cases—one from Delaware and one from New York—set forth the test to determine whether a claim is direct or derivative. See Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004); Yudell v. Gilbert, 99 A.D.3d 108 (N.Y. App. Div. 2012) (adopting the Tooley test). Under Tooley, courts "look to the nature of the wrong and to whom the relief should go." 845 A.2d at 1039. Specifically, courts ask (1) "who suffered the alleged harm," and (2) "who would receive the benefit of any recovery or other remedy." Id. at 1033. Here, both prongs indicate that plaintiffs' claims are direct, not derivative.

As to the first prong, the trusts' governing documents—as well as plaintiffs' own allegations—indicate that the contractual promises run in favor of the

---

[10] U.S. Bank is the indenture trustee, which is permitted to initiate suits on behalf of noteholders—not on behalf of the trust. (See, e.g., Adler Ex. G § 5.03(g); id. § 5.03(a) (indenture trustee may demand the collection of indebtedness "for the benefit of the Holders of the Notes"); id. § 5.03(c) (indenture trustee may "protect and enforce its rights and the rights of the Noteholders").)

[11] The Court notes that the Complaint asserts that plaintiffs seek to proceed derivatively and, in the alternative, on a class basis. Neither party discussed plaintiffs' direct claims as to the 33 indenture trusts in their submissions on this motion. This Opinion & Order addresses plaintiffs' claims pled as derivative claims.

investors—and not the trusts.  (See, e.g., Adler Decl. Ex. H § 2.04 (representations and warranties are expressly made "to the Trustee, for the benefit of certificateholders" and "inure to the benefit of Certificateholders"); id. § 2.02 (all obligations relating to mortgage loan documents are held "in trust for the exclusive use and benefit of all present and future Certificateholders"); Compl. ¶ 557 (U.S. Bank "had and continues to have the obligation to provide all Certificateholders with notice of . . . Events of Default."); id. ¶ 327 (same allegation regarding indenture trusts: "U.S. Bank must also give prompt written notice to all Noteholders of Servicer Event of Defaults."); id. ¶ 558 ("U.S. Bank breached its contractual, statutory and fiduciary duties and was negligent by failing to provide all Certificateholders with notice of these Events of Default.").)  Plaintiffs, as investors, suffered the alleged harm, indicating that their claims are direct under the first Tooley prong.[12]

As to the second prong, plaintiffs also stand to obtain any recovery.  While plaintiffs argue that any recovery would go to the trusts, the Complaint is quite clear that the trusts have an absolute obligation to pass any such recovery along to certificateholders.  (See e.g., Compl. ¶ 2 ("The trust's assets consist entirely of the underlying loans, and the principal and interest . . . payments on the loans are 'passed through' to the certificateholders."); id. ¶ 275 ("[T]he cash flow from interest

---

[12] Plaintiffs' contention that all certificateholders suffered injury equally (Compl. ¶¶ 264-65) is immaterial under Tooley.  See Tooley, 845 A.2d at 1037 ("[A] direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim.").

13

and principal payments is passed through to the trust and distributed to certificateholders in the order laid out in the securitization agreements, commonly referred to as the 'waterfall'[.]"); id. ¶ 280 ("After collection, the servicer sends the funds to the trustee, which then makes payments to the certificateholders.").)  The trusts themselves would receive no benefit and lack discretion to hold onto any recovery obtained.  The fact that the payment path of any recovery is via the trusts does not alter its true recipient.  In sum, both Tooley prongs indicate that plaintiffs' claims are direct, not derivative.

## IV.   CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is GRANTED.  Plaintiffs' claims as to the 810 PSA trusts are dismissed in their entirety; plaintiffs' claims as to the 33 indenture trusts are dismissed to the extent plaintiffs seek to proceed derivatively.

Should plaintiffs seek to amend, they must file any proposed Amended Complaint and a motion pursuant to Rule 15 of the Federal Rules of Civil Procedure within **21 days** from the date of this Opinion & Order.  No proposed Amended Complaint should seek to assert claims as to any of the 810 PSA trusts as to which this Court has declined to exercise supplemental jurisdiction.  To allow for careful review of those allegations necessary to state a claim, any proposed Second Amended Complaint shall be not more than **75 pages** in length.  (Additional background materials may be in an appendix.)

The Clerk of Court is directed to terminate the motion at ECF No. 56.

SO ORDERED.

Dated:     New York, New York
            May 18, 2015

                                                      KATHERINE B. FORREST
                                                     United States District Judge