UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACKROCK CORE BOND PORTFOLIO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>    Defendant. | Case No. 14-cv-09401-PGG |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

I. INTRODUCTION ............................................................................................................... 1

II. STATEMENT OF FACTS .................................................................................................. 4

    A. The Trusts ................................................................................................................ 4

    B. U.S. Bank's Contractual Obligations To The Class ................................................ 5

        1. U.S. Bank's Duties To Address Seller Breaches ......................................... 5

        2. U.S. Bank's Duty To Remedy Servicer Breaches ....................................... 6

        3. U.S. Bank's Duties Upon An Indenture Event Of Default .......................... 7

    C. U.S. Bank's Duties Under The TIA ......................................................................... 8

III. U.S. BANK'S BREACHES OF CONTRACT AND VIOLATIONS OF THE TIA .......... 8

    A. U.S. Bank's Breaches Of Duties Regarding The Trusts' Claims Against Sellers ............................................................................................................ 8

    B. U.S. Bank's Breaches Of Its Duties With Respect To Servicing Violations .............................................................................................................. 10

IV. CLASS CERTIFICATION IS APPROPRIATE ............................................................... 12

    A. Rule 23(a) Requirements Are Satisfied ................................................................. 13

        1. The Class Is Numerous .............................................................................. 13

        2. Class Members Share Common Questions Of Law And Fact .................. 14

        3. Plaintiffs' Claims Are Typical Of The Class ............................................. 17

        4. Plaintiffs Will Fairly And Adequately Represent The Class ..................... 18

    B. The Requirements Of Rule 23(b)(3) Are Also Satisfied ....................................... 19

        1. Common Questions Of Law And Fact Predominate Under Rule 23(b)(3) ..................................................................................................... 19

        2. A Class Action Is Superior ........................................................................ 22

    C. The Class Is Ascertainable ..................................................................................... 23

    D. Bernstein Litowitz Should Be Appointed As Class Counsel ................................ 24

V. CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014).................................................................................................17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................22

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  269 F.R.D. 340 (S.D.N.Y. 2010)..............................................................................15, 23, 25

*BlackRock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
  165 F. Supp. 3d 80 (S.D.N.Y. 2016).....................................................................................2

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  778 F. Supp. 2d 375 (S.D.N.Y. 2011)...................................................................................7

*Brecher v. Rep. of Arg.*,
  806 F.3d 22 (2d Cir. 2015).......................................................................................3, 23, 24

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010).........................................................................................12, 13

*In re China MediaExpress Holdings, Inc. Shareholder Litig.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)....................................................................................18

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)...........................................................................3

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..................................................................................................13

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014).........................................................................................14

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)................................................................................................25

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014).........................................................................................24

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007).....................................................................23

*Excelsior Fund, Inc. v. JP Morgan Chase Bank, NA*,
  2007 WL 950134 (S.D.N.Y. Mar. 28, 2007)......................................................................24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)..................................................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
   2013 U.S. Dist. LEXIS 99959 (S.D.N.Y. July 12, 2013) ...............................................15

*Fogarazzo v. Lehman Bros., Inc.*,
   263 F.R.D. 90 (S.D.N.Y. 2009)......................................................................................13

*Fort Worth Emps'. Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014).......................................................................13, 17, 20

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y. 2012).........................................................................19, 20, 23

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. 2014)....................................................................................18

*Kalkstein v. Collecto, Inc.*,
   304 F.R.D. 114 (E.D.N.Y. 2015)....................................................................................18

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008)....................................................................................21

*Lewis Tree Service, Inc. v. Lucent Techs. Inc.*,
   211 F.R.D. 228 (S.D.N.Y. 2002).........................................................................14, 15, 16

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).....................................................................................14, 15

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002)....................................................................................24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).......................................................................................................22

*Pub. Emps'. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011).........................................................................13, 14, 23

*Reed v. Fed. Ins. Co.*,
   123 A.D.2d 188 (2d Dep't 1987).......................................................................................9

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. The
   Bank of N.Y. Mellon*,
   914 F. Supp. 2d 422 (S.D.N.Y. 2012)..............................................................................7

*Ret. Bd. of the Policemen's Annuity & Fund of the City of Chi. v. The Bank of N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014) .............................................................................................. 7

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ......................................................................................... 3, 21

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................................................ 14

*Robinson v. Metro–North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001) ............................................................................................ 17

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ................................................................... 24

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015) ............................................................................... 7

*In the Matter of Scher Law Firm, LLP v. DB Partners I, LLC*,
  948 N.Y.S.2d 335 (2d Dep't 2012) ................................................................................... 9

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................................... 17

*Seekamp v. It's Huge, Inc.*,
  2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ............................................................ 15, 23

*Steinberg v. Nationwide Mut. Ins. Co.*,
  224 F.R.D. 67 (E.D.N.Y. 2004) .......................................................................... 2, 14, 15

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
  131 F.R.D. 38 (S.D.N.Y. 1990) ...................................................................................... 13

*US Foods, Inc. v. Catholic Healthcare West*,
  134 S. Ct. 1938 (2014) ...................................................................................................... 2

*In re U.S. Foodservice Inc. Pricing Litig.*,
  2011 WL 6013551 (D. Conn. Nov. 29, 2011) ................................................................ 15

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d. Cir. 2013) ................................................................................... passim

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................. 14, 18

*Woloszynowski v. N.Y. Cent. R.R. Co.*,
   254 N.Y. 206 (1930) ..........................................................................................................9

**Statutes, Rules & Regulations**

15 U.S.C.
   § 77mmm(c) ......................................................................................................................8
   § 77ooo(b) .........................................................................................................................8
   § 77ooo(c) .........................................................................................................................8

Federal Rules of Civil Procedure
   Rule 23(a) ...............................................................................................................1, 12, 25
   Rule 23(a)(1) ................................................................................................................2, 13
   Rule 23(a)(2) ..........................................................................................................2, 14, 16
   Rule 23(a)(3) ....................................................................................................................3, 17
   Rule 23(a)(4) ......................................................................................................3, 18, 19, 25
   Rule 23(b) .....................................................................................................................12, 13
   Rule 23(b)(3) ............................................................................................................. *passim*
   Rule 23(g) ...........................................................................................................................1

7A Wright & Miller, Fed. Practice & Procedure § 1760 (3d ed. 1998) ..........................................4

In accordance with the Court's June 15, 2017 Order (ECF No. 200), and pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(g), Plaintiffs respectfully move the Court for an Order: (i) certifying a class of all individuals who purchased or otherwise acquired a beneficial interest in a security issued from the Trusts identified in Exhibit 2 to the supporting declaration of Timothy A. DeLange between the date of offering and 60 days from the final order certifying the class and who hold that beneficial interest in the security through the date of final judgment in the District Court, and who were damaged as a result of Defendant U.S. Bank, National Association's ("U.S. Bank's" or "Defendant") alleged breaches of contract and violations of the Trust Indenture Act of 1939 ("TIA") (collectively, the "Class");[1] (ii) appointing Plaintiffs as Class Representatives for the respective Trusts in which they hold notes; and (iii) appointing Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") Class counsel.

## I. INTRODUCTION

This action concerns U.S. Bank's breach of its contractual and statutory duties as indenture trustee for the twenty-five Delaware statutory Trusts at issue in this action.[2] After learning of Seller and Servicer breaches, U.S. Bank failed to: (i) provide notice of known Seller and Servicer defaults; (ii) enforce the Sellers' repurchase requirements and the Servicers' prudent servicing obligations; (iii) take appropriate action against responsible parties to protect noteholders' interests; and (iv) provide notice to noteholders of all defaults. Instead, U.S. Bank did virtually

---

[1] Excluded from the Class are the Defendant, the Originators, the Sellers, the Master Servicers and the Servicers to the Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

[2] No named Plaintiff currently holds in two of the residential mortgage-backed securities ("RMBS") trusts that were the subject of the Amended Complaint: Structured Asset Securities Corporation, Series 2004-GEL2; and Structured Asset Securities Corporation, Series 2004-NP1 (collectively, "SASCO Trusts."). Accordingly, Plaintiffs do not move to certify claims pertaining to the SASCO Trusts.

nothing to protect noteholders in order to serve its own business interests. U.S. Bank's wrongful conduct caused Plaintiffs and hundreds of other noteholders to suffer substantial losses, giving rise to sustained claims for breach of contract and violations of the TIA.[3]

Plaintiffs and other noteholders' breach of contract and TIA claims are best addressed and resolved on a class basis to advance judicial economy and provide meaningful relief to noteholders that U.S. Bank's conduct has damaged. Indeed, courts in this Circuit recognize such cases as being well-suited for class action treatment.[4] This case is no different.

This action meets each of Rule 23's requirements.

***Numerosity***. The Class is so numerous that joinder of all members is impracticable. *See* Rule 23(a)(1). Indeed, there are at least several hundred and possibly thousands of Class members.[5]

***Commonality and Predominance***. There are questions of both law and fact common to the Class (Rule 23(a)(2)), and these common legal and factual questions predominate over any questions affecting only individual members. Rule 23(b)(3). Plaintiffs' and the Class' claims are "materially uniform" insofar as the Trusts' Governing Agreements and the TIA impose the same fundamental duties on U.S. Bank, which U.S. Bank owed equally to all noteholders.[6] Moreover, the question of U.S. Bank's breach of these duties will focus predominately on common evidence

---

[3] *BlackRock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80 (S.D.N.Y. 2016).
[4] *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123-27 (2d Cir. 2013), *cert. denied, US Foods, Inc. v. Catholic Healthcare West*, 134 S. Ct. 1938 (2014); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").
[5] *See* Declaration of Timothy A. DeLange in Support of Plaintiffs' Motion for Class Certification of Class Representatives and Class Counsel ("DeLange Decl."), Ex. 1, (Amended Expert Report of Michael L. Hartzmark, Ph.D.).
[6] *U.S. Foodservice Inc.*, 729 F.3d at 125.

to determine the underlying Seller and Servicer breaches, U.S. Bank's discovery of these breaches, and its failure to take action on behalf of noteholders. Thus, the question of whether U.S. Bank violated its duties is common to all Class members. Finally, although not required under Second Circuit law,[7] Plaintiffs offer a damages model susceptible of measurement across the entire Class and consistent with their underlying theory of classwide liability.[8]

*Typicality and Adequacy.* Plaintiffs' claims and the defenses thereto are typical of those of the Class (Rule 23(a)(3)), and Plaintiffs will fairly and adequately protect the interests of the Class. Rule 23(a)(4). Plaintiffs and the Class assert identical breach of contract and TIA claims governed under federal and New York law, arising from U.S. Bank's same breaches. Moreover, Plaintiffs are not subject to any unique defenses and share all Class members' common interest in maximizing the Class' recovery. Further, Plaintiffs have and will continue to actively monitor and supervise this action, have a full understanding of the responsibilities of a class representative, and have retained experienced counsel with a proven track record in class actions like this one.

*Superiority.* A class action is preferable to any other method for fairly and efficiently adjudicating this controversy. *See* Rule 23(b)(3). Multiple lawsuits would be costly and inefficient, and no manageability issues arise from allowing this case to proceed as a class action.

*Ascertainability.* Finally, Plaintiffs' proposed class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[9]

---

[7] *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("we do not read *Comcast* as precluding class certification where damages are not capable of measurement on a classwide basis").

[8] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013); *U.S. Foodservice*, 729 F.3d at 123, n.8.

[9] *Brecher v. Rep. of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Wright & Miller, Fed. Practice & Procedure § 1760 (3d ed. 1998))

Consistent with *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ("*Royal Park/Deutsche Bank*"), the Class definition now includes a temporal limitiation. Moreover, the "obstacles" identified in *Royal Park/Deutsche Bank* with respect to determining class members' standing in light of secondary market trading do not apply, because all transfers of the securities are necessarily governed by New York law. *See e.g.,* DeLange Decl., Ex. 7; *Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*, 2007 WL 950134, at \*6 (S.D.N.Y. Mar. 28, 2007).

## II. STATEMENT OF FACTS

### A. The Trusts

The Trusts were created between 2004 and 2007, and issued RMBS originally secured by mortgage loans valued at more than $19.4 billion. To date, the Trusts have suffered total realized collateral losses of $1.8 billion. A common set of securitization agreements establishing U.S. Bank's duties to noteholders, including the Mortgage Loan Purchase and Sale Agreements ("MLPAs"), the Trust Agreement, the Sale and Servicing Agreement ("SSA"), and the Indentures (or similar agreements) (collectively, the "Governing Agreements") govern each Trust. ECF No. 74 ¶¶54-65. Each Trust is subject to the TIA. *Id.* at ¶¶ 18, 174-78.

The Notes contain an express New York controlling law provision governing their transfer. *See, e.g.,* DeLange Decl., Ex. 4. Each of the Governing Agreements also expressly provides that New York law governs. *See, e.g.,* DeLange Decl., Ex. 7.

[REDACTED]

---

[10] DeLange Decl., Ex. 32; *see also* DeLange Decl., Ex. 3, Exs. 3-5.

[REDACTED]

### B. U.S. Bank's Contractual Obligations To The Class

The Governing Agreements impose on U.S. Bank substantially identical duties with respect to addressing defects in the underwriting and servicing of the underlying mortgage loans.

#### 1. U.S. Bank's Duties To Address Seller Breaches

Under the MLPAs, the originator or sponsor makes common representations and warranties concerning the characteristics, quality, and risk profile of the mortgage loans. *See, e.g.*, DeLange Decl., Ex. 28, MLPA Schedule III. Among the representations and warranties of the Seller in the MLPA are the following:

- The information in the mortgage loan schedule is true and correct in all material respects;

- Each loan complies in all material respects with all applicable local, state and federal laws and regulations at the time it was made;

- The mortgaged properties are lawfully occupied as the principal residences of the borrowers unless specifically identified otherwise;

- The borrower for each loan is in good standing and not in default;

- No loan has a loan-to-value ratio of more than 100%;

- The related mortgage file contains certain specified documents and instruments;

- Title, priority and enforceability of the liens securing the mortgage loans will be perfected and properly transferred;

- Each mortgaged property was the subject of a valid appraisal; and

---

[11] *Id.* at 157:4-22; 170:13-171:1; 181:1-12; 190:8-15; 230:19-231:2; 245:9-12; 251:10-14. [REDACTED]

[REDACTED] *Id.* at 77:9-78:21

- Each loan was originated in accordance with the underwriting guidelines of the related originator. *Id.*

Upon the sale of the mortgage loans to the Trusts, the rights under the MLPAs, including with regard to the Sellers' representations and warranties, were assigned to U.S. Bank in its capacity as Indenture Trustee. DeLange Decl., Ex. 31.

Under the SSAs, if U.S. Bank "discovers" that one of the mortgage loans underlying the Trusts materially breaches one of the representations and warranties, U.S. Bank must give prompt written notice to the responsible Seller and other contract parties. DeLange Decl., Ex. 34. If the breach is not timely cured, U.S. Bank must enforce the breaching Sellers's obligation to substitute or repurchase the defective loan and take all other appropriate action necessary to enforce the Trusts' rights. DeLange Decl., Ex. 34.

### 2. U.S. Bank's Duty To Remedy Servicer Breaches

Under the Governing Agreements, U.S. Bank also has certain duties with respect to enforcing the obligations of the Servicers.[12] In particular, where U.S. Bank learns of a Servicer or Master Servicer's failure to observe or perform, in any material respect, covenants or agreements under the SSAs (which set forth the servicer's obligations), U.S. Bank must provide written notice to the Servicer. ECF No. 74 ¶¶ 57-58. Such failures may include a failure to service the mortgage loans in accordance with accepted servicing practices and the failure to supervise and oversee the servicing of the mortgage loans. DeLange Decl., Ex. 35. If the responsible Servicer fails to cure

---

[12] The Master Servicers and Servicers for the Trusts were: Wells Fargo Bank, Accredited Home Lenders, GreenPoint Mortgage Funding, Wilshire Credit Corp, Irwin Union Bank & Trust Company, Aurora Loan Services, Bayview Loan Servicing, LLC, M&T Mortgage Corporation, Ocwen Loan Servicing, LLC, Bank of America Home Loans Servicing, PNC Bank, N.A., Select Portfolio Servicing, Inc., HomeBanc Corp, Chase Home Financing LLC, Green Tree Servicing LLC, Nationstar Mortgage LLC, PHH Mortgage Corporation, Cenlar FSB, Thornburg Mortgage Home Loans, Inc., Mellon Trust of New England, N.A., First Horizon Home Loans Corp., Colonial Savings, F.A, First Republic Bank and Dovenmuehle Mortgage Co. *See* DeLange Decl., Ex. 33.

the breach, the default ripens into a Servicer or Master Servicer Event of Default. ECF No. 74 ¶¶ 58. Under the SSA, if an Event of Default as to which a responsible officer of U.S. Bank has received written notice or of which it has actual knowledge, U.S. Bank is required to give prompt, written notice to all noteholders. DeLange Decl., Ex. 36. The remedies for uncured Servicer or Master Servicer Events of Default include termination of the servicer and recoupment of Trust assets lost as a result of the Servicer's violations. DeLange Decl., Ex. 37.

### 3. U.S. Bank's Duties Upon An Indenture Event Of Default

U.S. Bank's duties resemble those of an ordinary fiduciary following the occurrence of an Indenture Event of Default.[13] An Indenture Event of Default occurs when the issuing trust fails to perform its obligations under the Indenture, and after proper notice from the indenture trustee that default is not cured. *See, e.g.,* DeLange Decl., Ex. 7 at § 3.06. Among the issuing trust's obligations – the breach of which can ripen into an Indenture Event of Default – are to "take such . . . action necessary or advisable to . . . cause the Issuer or Master Servicer to enforce any of the rights of the Mortgage Loans" or to "preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the noteholders in such Trust Estate against the claims of all persons and parties." DeLange Decl., Ex. 38. As such, known and unremedied Seller and Servicer defaults give rise to Indenture Events of Default.[14]

---

[13] *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 401 (S.D.N.Y. 2011).
[14] *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 605 (S.D.N.Y. 2015); *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. The Bank of N.Y. Mellon*, 914 F. Supp. 2d 422, 432 (S.D.N.Y. 2012), *abrogated on other grounds by* 775 F.3d 154 (2d Cir. 2014) ("While these alleged failures constitute[ ] direct breaches of the SSA, they also violate[ ] the issuer's duties under the Indenture. After all, if [Sellers] failed to cure or repurchase defective mortgages, the issuer similarly failed to 'enforce any rights with respect to [the Trust Fund],' as the Indenture required it to do.").

After the occurrence of an Indenture Event of Default, U.S. Bank must use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. DeLange Decl., Ex. 39. U.S. Bank must also provide notice to the noteholders of such Event of Default. DeLange Decl., Ex. 40.

### C. U.S. Bank's Duties Under The TIA

The TIA requires U.S. Bank to inform noteholders of defaults within ninety days after their occurrence. 15 U.S.C. § 77ooo(b) (citing 15 U.S.C. § 77mmm(c)). In case of default, the TIA requires U.S. Bank to exercise its rights and powers under the Indenture as a prudent person would, under those circumstances, in the conduct of the person's own affairs. 15 U.S.C. § 77ooo(c). DeLange Decl., Exs. 39, 45.

## III. U.S. BANK'S BREACHES OF CONTRACT AND VIOLATIONS OF THE TIA

### A. U.S. Bank's Breaches Of Duties Regarding The Trusts' Claims Against Sellers

Common direct evidence will show that U.S. Bank discovered significant breaches of representations and warranties in each of the Trusts, but failed to act as obligated under the Governing Agreements and the TIA. For example, U.S. Bank prepared or received final certifications and document exception reports. DeLange Decl., Ex. 30. In particular, the Governing Agreements obligated U.S. Bank to certify that key documents for the mortgage loans were included in the mortgage files and to create an exception report identifying any incomplete mortgage loan files. DeLange Decl., Exs. 41 (a-b), 42 (a-c). The exception reports prove that U.S. Bank learned of document defects for hundreds, if not thousands, of mortgage loans that were never cured. DeLange Decl., Exs. 30, 43 (a-c). Similarly, U.S. Bank received servicing data and prepared or received remittance reports, which tracked the performance of the mortgage

loans and reflected early payment defaults in breach of Seller representations and warranties. *See, e.g.*, DeLange Decl., Ex. 53.

Common circumstantial evidence will also show U.S. Bank's discovery of, or willful blindness to, Seller breaches of representations and warranties.[15] ████████████ ████████████████████████████████████████████ ████████████████████████ DeLange Decl., Ex. 3 at 30:14-36:1. The high level of delinquencies, modifications, defaults and collateral losses further confirmed widespread Seller representation and warranty breaches across the Trusts' mortgage loans. DeLange Decl., Ex. 52.

In addition, U.S. Bank possessed unique knowledge of the Sellers' systemically deficient underwriting practices. As trustee to other RMBS trusts, U.S. Bank repeatedly received written notice from monoline insurers, investors and other stakeholders of these same Sellers systemic breaches. DeLange Decl., Ex. 47 at 188:24-196:16, Exs. 501, 503. U.S. Bank also actively tracked forensic reviews of other U.S. Bank-administered securitizations involving the same loan product, same vintage, same originator, same sponsor, same servicer and same applicable underwriting guidelines as those of the Trusts. DeLange Decl., Ex. 48 at 234:13-239:16, Ex. 537. U.S. Bank subsequently instituted litigation against these same Sellers at the instruction of directing holders, wherein U.S. Bank admitted the Sellers' systemically flawed underwriting practices. DeLange Decl., Ex. 47 at 219:10-226:25; Ex. 46 at 278:24-283:23; Ex. 50. U.S. Bank employees also

---

[15] *See Woloszynowski v. N.Y. Cent. R.R. Co.*, 254 N.Y. 206, 208-09 (1930) (no direct proof is required to establish a defendant's knowledge; circumstantial evidence may be used); *see also Reed v. Fed. Ins. Co.*, 123 A.D.2d 188, 195 (2d Dep't 1987) (same); *In the Matter of Scher Law Firm, LLP v. DB Partners I, LLC*, 948 N.Y.S.2d 335 (2d Dep't 2012) (a plaintiff may rely on evidence of willful blindness on the part of defendant to prove that defendant had knowledge of the alleged fact).

actively followed high profile private and public enforcement proceedings exposing the Sellers' systemic violations of stated underwriting guidelines. DeLange Decl., Ex. 46 at 79:13-85:19, 285:19-286:22, Ex. 571; Ex. 58 at 34:13-35:19. This included litigation involving the Trusts, or cases in which U.S. Bank was subpoenaed. DeLange Decl., Ex. 47 at 159:14-162:24, 202:22-209:23, Ex. 48 at 241:3-244:17; Ex. 51.

Despite discovering representation and warranty breaches in the Trusts, U.S. Bank failed to perform its contractual and statutory obligations to protect the Trusts and the Class. *See* ECF No. 74 ¶¶141-49. Consequently, thousands of defective loans that breached representations and warranties were not cured or repurchased in violation of the Governing Agreements' substantially identical provisions. *See* ECF No. 74 ¶142. Moreover, U.S. Bank failed to provide notice to noteholders of these defaults, as the TIA requires. *See* ECF No. 74 ¶175.

### B. U.S. Bank's Breaches Of Its Duties With Respect To Servicing Violations

Common evidence will show U.S. Bank's responsible officers' actual knowledge (including through receipt of written notice) of Servicer defaults and Servicer Events of Default. In particular, U.S. Bank's responsible officers received the Servicers' annual Statements as to Compliance and Independent Accounts Report. DeLange Decl., Ex. 59. The Servicers and their independent auditors reported year after year numerous instances of material noncompliance both with respect to their entire servicing platforms and with respect to the Trusts themselves. *Id.* U.S. Bank also received servicing data from Servicers and prepared or received monthly remittance reports, which identified and tracked when certain defaulted mortgage loans within the Trusts entered a distressed state, when the mortgage loans were processed and eliminated from the Trusts' loan pools, and the servicing costs associated with such mortgage loans. DeLange Decl., Ex. 52,