53. The servicing data and remittance reports showed that Servicers' timing in foreclosing on defaulted mortgage loans within the Trusts violated acceptable servicing practices. *Id.*

For example, as reflected below, Loan ID: *****2005[16] in the AABST 2005-1 Trust was originated and sold to the Trust on or about January 2005 with original balance of $360,000. The borrower defaulted and the loan went into foreclosure in September 2008. The Servicer, however, failed to liquidate the loan until October 2016, meaning that the loan remained in foreclosure status for *more than 8 years*, unnecessarily accruing servicing fees at the Trust's expense during this period.



Likewise, Loan ID: *****2040 in the AABST 2005-3 Trust was originated in June 2005. The borrower defaulted in August 2008. Amazingly, the servicer maintained the distressed loan on its books until April 2016, *more than 7 years*, all the while collecting servicing fees.



The specific loans detailed above are but two examples. Plaintiffs will show through similar servicing data that: (i) each of the Trusts are filled with loans that have been distressed for

---

[16] To avoid disclosing borrower-specific information, Plaintiffs provide partial Loan ID numbers.

prolonged periods causing the Trusts to incur significant yet avoidable servicing expenses; and (ii) U.S. Bank's responsible officers had actual knowledge and received written notice of such servicing violations.

Furthermore, U.S. Bank knew of servicing violations through its (i) involvement in enforcement actions and other litigation stemming from the servicers' violations with respect to other trusts; ECF. No. 74 ¶¶ 112-21, 131-33, Ex. 13, 14; and (ii) receipt of written notice from investors in other trusts, for which it also served as the trustee, of the systemic servicing violations by the same entities that service the Trusts at issue here. ECF No. 74 ¶¶134-36.

Despite knowing of rampant Servicer breaches and Servicer Events of Default, U.S. Bank failed to address these servicing violations in breach of its contractual and statutory duties, or otherwise take action against responsible parties as a prudent person would under the same circumstances. Moreover, U.S. Bank failed to provide notice of these defaults to noteholders. Such servicing misconduct has substantially driven up the Trusts' expenses and losses, and the Class has suffered significant damages as a result of U.S. Bank's uniform common failures. DeLange Decl., Ex. 1.

## IV. CLASS CERTIFICATION IS APPROPRIATE

Class certification requires a two-step analysis. First, a plaintiff must show that all four of the prerequisites of Rule 23(a) are satisfied: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

Second, the action must satisfy at least one of the subcategories of Rule 23(b). In this action, Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is

superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). As set forth below, each of the Rule 23(a) and 23(b)(3) requirements are met.

### A.  Rule 23(a) Requirements Are Satisfied

#### 1.  The Class Is Numerous

Certification is appropriate when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Pub. Emps'. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 277 F.R.D. 97, 103-44 (S.D.N.Y. 2011). "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)). The precise quantification or identification of potential class members is unnecessary at class certification "'because a court may make common sense assumptions regarding numerosity.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007). In the Second Circuit, the numerosity requirement *is presumptively* satisfied at a level of approximately 40 class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014); *see also Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (certifying class with 36 potential members).

In support of their motion for class certification, Plaintiffs submit the Amended Declaration of Dr. Michael Hartzmark. DeLange Decl., Ex. 1. Based on publicly available data on the reported holdings of large financial institutions, Dr. Hartzmark, has identified at least 272 separate noteholders that currently hold nearly 8 million notes in the Trusts, which collectively had an original principal balance of nearly $8 billion when issued. *Id.* at ¶17. After accounting for principal distributions and write-offs, there are still outstanding nearly 16 million Notes in *active*

tranches that institutions hold, implying that over 50% of all current holdings of *active* tranches are not reported or accounted for in the publicly available data. *Id.* ¶17. Accordingly, it is reasonable to expect that the Class far exceeds 272 class members. *Id.* ¶¶17, 20.

Further, based on publicly available information, noteholders in the Trusts are geographically dispersed institutions and individuals with a wide range of investment amounts, from tens of thousands to hundreds of millions of dollars. This fact supports certification, which will promote judicial efficiency and avoid duplicative litigation. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions [and] geographic dispersion of class members"). The joinder of these investors would be impractical. *See, e.g., Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of numerous and dispersed sophisticated investors' claims would be impractical).

### 2. Class Members Share Common Questions Of Law And Fact

"Commonality" requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe the commonality requirement liberally. *Steinberg*, 224 F.R.D. at 74, citing *Lewis Tree Service, Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002) (commonality is considered a "minimal burden for a party to shoulder"). Courts demand only that the plaintiff's and the class member's claims "share a common question of law or of fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Lewis Tree*, 211 F.R.D. at 231. Indeed, the Supreme Court has held that "***[e]ven a single [common] question' will do***." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014) (describing commonality requirement as a "low hurdle"). A question is common if its answer will resolve an issue relevant to the claims on a classwide basis "in one stroke" (*Wal-Mart*, 564 U.S. at 350), regardless of whether it will "overshadow potential

individual issues." *In re U.S. Foodservice Inc. Pricing Litig.*, 2011 WL 6013551, at *4 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

Courts within the Second Circuit routinely find commonality is satisfied in cases where: (a) a defendant is alleged to have breached an obligation under substantively identical or similar form agreements (*see, e.g., U.S. Foodservice*, 729 F.3d at 123-27; *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *3 (N.D.N.Y. Mar. 13, 2012); *Fleisher v. Phoenix Life Ins. Co.*, 2013 U.S. Dist. LEXIS 99959 (S.D.N.Y. July 12, 2013)); and (b) the defendant's challenged practice follows a common course of conduct that has affected all putative class members. *See Lewis Tree*, 211 F.R.D. at 231; *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 348 (S.D.N.Y. 2010).

Here, the commonality requirement is easily satisfied. First, common factual questions exist among the putative Class members. *Lewis Tree*, 211 F.R.D. at 232. U.S. Bank breached substantially identical contractual terms to which Class members were beneficiaries. Adjudication of Plaintiffs' claims will require the Court to apply key contractual terms, such as "discovery" of Seller representation and warranty breaches, "actual knowledge" of servicer defaults, Servicer Events of Defaults, and Indenture Defaults, and "the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's affairs," as they appear in each of the Governing Agreements. Because these key terms, their definitions, and other pertinent contractual provisions are substantively similar, if not identical, in all of the Governing Agreements, such contracts can be considered uniform or "form contracts" for the purposes of this litigation. *Steinberg*, 224 F.R.D. at 74.

That U.S. Bank engaged in a common course of conduct with respect to the putative Class further demonstrates that common questions of fact exist among the Class. *Id.* ███████

█████████████████████████████████████████
████████████████████████[17] In particular, U.S. Bank's practice of repeatedly failing to take action absent direction or indemnity from noteholders is a common course of conduct affecting all putative Class members and giving rise to contractual and statutory claims. Because the Governing Agreements are, for the purposes of this litigation, substantially form contracts and U.S. Bank's practice of repeatedly taking no action absent noteholder direction and indemnity is a standard practice affecting the entire putative class, a "common factual nexus exists among the purported class." *Lewis Tree*, 211 F.R.D. at 232.

Moreover, common legal issues exist among the putative Class, including whether:

- U.S. Bank discovered mortgage loans that breached Seller representations and warranties;
- U.S. Bank had knowledge of Servicer breaches, defaults, and Servicer Events of Default;
- U.S. Bank had knowledge of Issuer Defaults;
- U.S. Bank failed to enforce the Sellers' repurchase obligations and the Servicers' prudent servicing requirements;
- U.S. Bank failed to investigate and pursue claims against other responsible parties; and
- U.S. Bank failed to provide notice of all Servicing Events of Default and Issuer Events of Default to noteholders.

These issues are not complex and involve general principles of New York contract law and federal statutory interpretation. Accordingly, common issues of both fact and law exist among the putative Class in satisfaction of the commonality requirement in Rule 23(a)(2).

---

[17] DeLange Decl., Ex. 3 at 157:4-22; 170:13-171:1; 181:1-12; 190:8-15; 230:19-231:2; 245:9-12; 251:10-14.

### 3. **Plaintiffs' Claims Are Typical Of The Class**

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. at 350, as recognized in *Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014). "Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-06 (S.D.N.Y. 2015). Instead, Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Fort Worth*, 301 F.R.D. at 132.

Here, Plaintiffs' and absent Class members' claims arise from the same course of events, and each Class member will make similar legal arguments to prove U.S. Bank's liability. Moreover, U.S. Banks's uniform practices employed across all of the Trusts - namely, U.S. Bank's failure to: (i) provide notice of known Seller and Servicer defaults; (ii) enforce the Sellers' repurchase requirements and the Servicers' prudent servicing obligations; (iii) appropriate action against responsible parties to protect noteholders' interests; and (iv) provide notice to noteholders of all defaults – give rise to Plaintiffs and the Class' claims equally.

Furthermore, Plaintiffs and the Class allege that U.S. Bank breached the same contractual and statutory duties it owed to all Class members equally. Thus, all Plaintiffs will marshal the same evidence and arguments in support of their claims. *Scotts EZ Seed Litig.*, 304 F.R.D. at 406. Indeed, courts have found the typicality requirement satisfied under similar circumstances. *See Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 12-cv-02865-KBF, Corrected Final Judgment and Order of Dismissal, ECF No. 328 (S.D.N.Y. Mar. 16, 2016)

(approving settlement class of breach of contract and TIA claims against trustee); *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-8066-JGK, Final Judgement and Order of Dismissal, ECF No. 130 (S.D.N.Y. July 24, 2016) (same).

### 4. Plaintiffs Will Fairly And Adequately Represent The Class

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citations omitted); *see also In re China MediaExpress Holdings, Inc. Shareholder Litig.*, 38 F. Supp. 3d 415, 425 (S.D.N.Y. 2014); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014).

Here, no antagonistic interests exist, as Plaintiffs "'possess the same interest and suffer[ed] the same injury as the class members.'" *Wal-Mart*, 564 U.S. at 348-49. Specifically, Plaintiffs each hold notes in one or more of the Trusts, and were damaged as a result of U.S. Bank's failure to comply with its contractual and statutory obligations. Each Class member also holds notes from one or more of the Trusts and were similarly damaged.

Plaintiffs are experienced fiduciaries and investors in securitized instruments, which include their interests in the Trusts at issue here. Plaintiffs' interests are directly aligned with those of other Class members – to maximize the amount recovered from U.S. Bank for its failure to fulfill its duties to the Class. *See, e.g., Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Moreover, since filing this action, Plaintiffs have taken seriously their role as Class Representatives and have acted diligently to protect the interests of the Class. At each stage,

Plaintiffs have actively participated in, supervised and monitored the litigation. Through their experienced counsel, Plaintiffs authorized the filing of the operative Amended Complaint, successfully opposed a motion to dismiss, pursued and responded to substantial discovery, including sitting for multiple day-long depositions, responding to numerous discovery requests, and producing over 423,000 documents to date. *See id.* Further, Plaintiffs have engaged expert witnesses and elicited their opinions. Plaintiffs' actions thus far fully satisfy Rule 23(a)(4)'s adequacy standard.

### B. The Requirements Of Rule 23(b)(3) Are Also Satisfied

This action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.

#### 1. Common Questions Of Law And Fact Predominate Under Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *U.S. Foodservice*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). This standard "'does not require a plaintiff to show that there are no individual issues.'" *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012). Instead, it requires that "a court's inquiry [be] directed primarily toward

whether the issue of liability is common to members of the class." *See Fort Worth*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

The primary common questions the Class must address to establish its claims will be whether U.S. Bank: (1) failed to enforce representation and warranty breaches, upon discovering them; (2) failed to notify the Servicers of failures to fulfill their obligations after learning of Servicer breaches, defaults and Servicing Events of Default and remedy these servicing breaches; (3) failed to provided notice to noteholders of uncured Servicing Events of Default and Issuer Events of Default; and (4) failed to act as a reasonable person would to protect its own assets after learning of Issuer Events of Default. These questions will necessarily be answered through common proof.

Indeed, the existence and scope of U.S. Bank's duties to Class members will be established through common evidence, including through the Governing Agreements for the Trusts. With respect to these obligations, the requirements imposed on U.S. Bank are substantially identical for all Class members. *U.S. Foodservice*, 729 F.3d at 124. Common evidence demonstrates that U.S. Bank breached its obligations. Specifically, such generalized proof includes U.S. Bank's internal files, communications and personnel's testimony reflecting its knowledge of Seller and Servicer breaches, as well as evidence of U.S. Bank's failure to take action.

A common methodology consistent with Plaintiffs' theory of liability will be used to measure each Class member's damages. DeLange Decl. Ex. 1, ¶¶13b, 31-69. Plaintiffs' damages model is based on U.S. Bank's and third-party published data with respect to the performance of the mortgage loans and a reunderwriting analysis of a sample of mortgage loans in the Trusts. *Id.* at ¶¶34, 37. As set forth in the expert report of Dr. Hartzmark, analyzing the extent to which losses in the Trusts were associated with mortgage loans that breached the Seller's representations and

warranties can and has been utilized to measure the impact of U.S. Bank's alleged failure to act. *Id.* at ¶¶30-52. The analysis includes an examination and identification of mortgage loans with material and adverse breaches of representations and warranties and to determine the extent to which losses on these mortgage loans would have been avoided if U.S. Bank performed its contractual duty to enforce the Seller's obligations to repurchase, replace, or cure defective mortgage loans. *Id.* at ¶¶ 23-31. Specifically, this analysis involves modeling collateral cash flows assuming the Sellers had fulfilled their obligations to allow the Trusts to "put-back" mortgage loans. *Id.* at 21-23

Similarly, damages attributable to the alleged servicing failures involve the analysis of mortgage loans within the Trusts to identify Servicer breaches and Servicer Events of Default, and assess the extent to which these resulted in higher losses or lower value to the collateral pool. *Id.*, ¶¶53-66.

These damage calculations as to breaching mortgage loans and servicing misconduct are capable of being performed in a formulaic common manner such that each Class member's damages calculation is performed in the same manner. *Id.*, ¶¶67-69. Although the specific amount of each Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Roach*, 778 F.3d at 405 (upholding well-established rule in Second Circuit that ("the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)"). Thus, Plaintiffs will establish U.S. Bank's liability and the amount of any damages through generalized proof and a classwide, common damages methodology. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied. Moreover, because the method for allocating damages would be based on the strict

guidelines set forth in the Prospectus Supplement and Servicing Agreement, the Class is free from individualized conflicts regarding the calculation and allocation of damages.

### 2. A Class Action Is Superior

Courts uniformly recognize that the class action device is superior to other available methods for the fair and efficient resolution of class claims. The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Moreover, as the Supreme Court explained:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A) the class members' interests in individually controlling the prosecution . . . of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3). Here, each factor weighs strongly in favor of class certification.

First, Class members have no overwhelming interest to proceed individually. "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,"

particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'" *AFTRA*, 269 F.R.D. at 355; *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *14 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice"). Based on publicly available information, the sizes of Class members' investments vary widely.

Additionally, the maintenance of a class action in this District ensures the efficient use of party and Court resources, while enabling the parties to more efficiently prosecute their claims and defenses. *See IndyMac*, 286 F.R.D. at 243; *Seekamp*, 2012 WL 860364, at *12. Further, because the members of the proposed Class are located in geographically dispersed areas, and because the notes in the Trusts were issued in this District which has overseen the majority of complex RMBS-related cases, the Southern District of New York is an appropriate forum.

Finally, Plaintiffs do not foresee any management difficulties that will preclude this case from being maintained as a class action. Consistent with Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, but appears to be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class. ECF No. 74, ¶¶195-200.

### C.     **The Class Is Ascertainable**

The Second Circuit has recognized an "'implied requirement of ascertainability'." *See Brecher*, 806 F.3d at 24 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d. Cir. 2006)). For a class to be ascertainable, the class definition must, first, be based on "objective criteria" and, second, be "administratively feasible" such that class members can be identified without conducting a "mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 25. This

standard "is 'not demanding' and 'is designed only to prevent the certification of a class whose membership is truly indeterminable.'" *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014). In fact, "[c]lass members need not be ascertained prior to certification, but 'the exact membership of the class must be ascertainable at some point in the case.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

Here, the proposed class definition is based on objective criteria that allows for the ready identification of class members. Specifically, the renewed class definition provides a meaningful temporal limitation because it provides a defined window of acquisition with fixed dates (i.e., between the date of offering and 60 days from the final order certifying the class), and a continuous ownership requirement through judgment. *See Brecher*, 806 F.3d at 25; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 1331288, at *5-6 (S.D.N.Y. Apr. 4, 2017).

Transaction records reflecting bond ownership will establish class membership. Indeed, this is the precise manner U.S. Bank utilizes to identify and communicate with current holders regarding trust activities. DeLange Decl., Ex. 49. Moreover, that the Trust securities trade on the secondary market does not necessitate individualized inquiries into class membership because New York law governs all transfers of the securities. *See, e.g.*, DeLange Decl., Ex.7; *Excelsior Fund, Inc. v. JP Morgan Chase Bank*, 2007 WL 950134, at *6 (S.D.N.Y. Mar. 28, 2007) (New York governed transfer of securities where notes contained "express New York governing law provision.").

### D.  Bernstein Litowitz Should Be Appointed As Class Counsel

Plaintiffs' chosen counsel Bernstein Litowitz will fairly and adequately represent the interests of the proposed Class. *See* DeLange Decl. Ex. 60. Bernstein Litowitz possesses extensive class action litigation knowledge and experience and have successfully prosecuted numerous high-

profile investor class actions, including some of the largest recoveries in this District.[18] Courts in this Circuit have repeatedly recognized the expertise and ability of Bernstein Litowitz's lawyers to effectively litigate complex class actions. Moreover, Bernstein Litowitz has vigorously prosecuted the Class's claims to date by, *inter alia*: identifying and investigating potential claims; defeating a motion to dismiss; engaging in extensive discovery; litigating numerous discovery motions; providing and obtaining significant written discovery and deposition testimony; and otherwise preparing the case for trial; *see also*, *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ("class counsel must be 'qualified, experienced and generally able' to conduct the litigation").

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to: (a) certify this action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (b) appoint Plaintiffs as the representatives of the proposed Class; and (c) appoint Bernstein Litowitz as Class Counsel.

Dated: June 21, 2017

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

/s/ *Timothy A. DeLange*
TIMOTHY A. DeLANGE

BLAIR A. NICHOLAS (admitted *pro hac vice*)
TIMOTHY A. DeLANGE (admitted *pro hac vice*)
BENJAMIN GALDSTON (admitted *pro hac vice*)
BRETT M. MIDDLETON (admitted *pro hac vice*)
RICHARD D. GLUCK (admitted *pro hac vice*)

---

[18] *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-03288-DLC (S.D.N.Y.) ($6 billion); *In re Cendant Corp. Sec. Litig.*, Master File No. 98-1664-WHW (D.N.J.) ($3.3 billion); *Bank of America*, Master File No. 09 MD 2058 (PKC) (S.D.N.Y. 2012) ($2.425 billion); *In re Nortel Networks Corp. Sec. Litig.*, No. 05-MD-1659 ($1.07 billion); *In re Merck & Co., Inc. Sec. Litig.*, No. 05-cv-1151; No. 05-cv-2367 (S.D.N.Y.) (1.06 billion); *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-cv-20743-RMW (N.D. Cal.) ($1.05 billion); *see also* DeLange Decl., Ex. UU.

Case 1:14-cv-09401-PGG-AJP   Document 219-1   Filed 08/18/17   Page 16 of 16

LUCAS E. GILMORE (admitted *pro hac vice*)
ROBERT S. TRISOTTO
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Counsel for Plaintiffs and the Proposed Class*